54356. ANDREWS et al. v. BUCKNER.

BIRDSONG, Judge.
Appellants, Andrews and Metropolitan Atlanta Rapid Transit Authority (MARTA), bring this appeal from a jury verdict and judgment in favor of Buckner in the amount of $24,000, arising out of an intersection accident between a MARTA bus operated by Andrews and an automobile operated by Buckner.

The facts show that Andrews, while driving his assigned bus upon a regular route, arrived at the

intersection of Capitol Avenue and Georgia Avenue in the city of Atlanta. That intersection is regulated by a traffic-control signal, otherwise denominated as a "red light." Upon arriving at the intersection, Andrews found the light to be red. He stopped, waiting for the light to turn green. Other vehicles also stopped at the intersection, Capitol Avenue at that point being a four-lane undivided road. After a longer wait than usual, the evidence shows that the other vehicle operators apparently concluded the light was malfunctioning (i.e., was stuck) a fact admitted by all parties, and proceeded on through the intersection. Andrews waited for a short time longer and also concluded that the light was stuck on red. Andrews testified that he looked carefully up and down Georgia Avenue, saw no approaching traffic and proceeded carefully out into the intersection. About half way through the intersection, Andrews heard the screech of tires, looked into his side mirror and first saw Buckner's auto just before it collided with the right rear area of the bus. It was the contention of MARTA and Andrews that Buckner was driving too fast and that his negligence was the cause of the accident. Buckner, on the other hand, testified that he was proceeding at a moderate and lawful rate of speed on Georgia Avenue approaching Capitol Avenue and that he had a green light. Just before he reached the intersection, Buckner suddenly saw a MARTA bus pull into the intersection directly in front of him. He could not stop in time and collided with the bus. There was evidence by the investigating police officer that Buckner was not "speeding" which contrasted with the fact that the "10,000 pound" bus was moved approximately 5 feet to the side by the impact. Buckner's vehicle was not seen by Andrews when Andrews first looked up Georgia Avenue prior to proceeding.

These basic facts are not contested by the parties. The trial court charged appropriately upon ordinary negligence, contributory negligence and comparative negligence. In order to find for Buckner, the court required the jury to find that Andrews was negligent in entering the intersection, that his negligence was the proximate cause of the accident, and if they so found, that the recovery would be affected by the degree of negligence

manifested by Buckner, if any. In addition, the court admitted evidence and charged that the law of Georgia and that of the City of Atlanta required vehicular traffic facing a red light to stop before entering the nearest crosswalk at an intersection and to remain standing until the green or "go" is shown alone. The court charged the jury that a violation of that statute was negligence per se. Andrews, in his testimony, admitted that he proceeded into the intersection while the light was still red. There was evidence that the light remained red for at least the next hour following the accident.

Appellants enumerate four errors, three dealing with the charge of the court, and the last being the denial of their motion for a new trial based upon the giving of the allegedly erroneous charges. *Held:*

1. In the first enumeration of error, appellants aver that inasmuch as all parties agree that the light was malfunctioning, it was error for the trial court to admit evidence of statutes or ordinances dealing with a properly functioning red light and to instruct the jury that appellants were guilty of negligence per se if the bus proceeded through a red light. We have found no precedent in this state to resolve this question.

Ga. L. 1953, Nov. Sess., pp. 556, 569, §§ 34 and 35 (Code Ann. §§ 68-1612 and 68-1613), now repealed, provided in pertinent part that obedience to official traffic-control devices requires a driver of a vehicle or motorman of a streetcar to obey the instructions of any official traffic-control device placed in accordance with the provisions of the Act, unless at the time otherwise directed by a police officer. § 68-1612. Section 68-1613 generally provides that vehicular traffic facing a red light shall stop before entering the nearest crosswalk at an intersection and shall remain standing until only the green light shows. Code Ann. § 68-1504 (6) (a), in effect at the time of the accident, but now repealed, defined a traffic-control device as any device, whether manually, electrically or mechanically operated by which traffic is alternately directed to stop and permitted to proceed. Buckner argues that Andrews could properly have proceeded through the red light only by calling on his radio telephone or otherwise attracting the attention of a

police officer and obtain that officer's direction to proceed through the traffic-control device contrary to its visible signal. Buckner urged that any other disregard of the red light consistutes a violation of the statute and ordinance. Appellants, on the other hand, argue that because the device did not alternately direct traffic to stop and proceed it was no longer a traffic-control signal as contemplated by the statute.

If a malfunctioning traffic light is still a "traffic-control signal" within the comtemplation of § 68-1613 and § 68-1504 (6) (a), a disregard of its direction is a violation of the statute and would constitute negligence per se. On the other hand, if this malfunctioning traffic control signal has the same effect as an ordinary stop sign, then a driver is required to stop and then proceed with caution upon seeing his way clear.

A potential answer to this conundrum is found in that portion of § 68-1612 which requires the operator of a streetcar to obey the instructions of any "official traffic-control device placed in accordance" with the provisions of the Act. There is no dispute that the red light was a properly displayed device, placed there by authorized persons. But the question still remains whether, because it no longer alternately directed traffic to stop and proceed, it was not a "traffic-control signal" within the meaning of Code § 68-1613. Some additional light is shed by the words used by the General Assembly in the language of the modifying statute which repealed the old statute. We do not contend by this approach that it is proper to apply the provisions of the new statute retroactively, rather, we look to the new statute merely to seek clarification of the words "placed in accordance with the Act." Ga. L. 1974, pp. 633, 645 (Code Ann. § 68A-201) replaced Code Ann. § 68-1612. In subparagraph (d) of § 68A-201, the present code section provides as follows: "(d) Any official traffic-control device placed pursuant to the provisions of this Title and purporting to conform to the lawful requirements pertaining to such devices shall be presumed to comply with the requirements of this Title, unless the contrary shall be established by competent evidence."

We are satisfied in view of the above considerations

that a malfunctioning red light is no longer a traffic-control signal alternately stopping and allowing traffic to proceed within the meaning of repealed Code Ann. § 68-1613, and thus did not require traffic facing a red light to remain stopped until a green light appeared. This does not mean that a fixed red light is not a traffic-control device; rather, it has the same effect as a stop sign which requires a vehicle to stop and then proceed through the intersection only when it is safe to do so. Ga. L. 1953, Nov. Sess., pp. 556, 590 (Code Ann. § 68-1652), repealed by Ga. L. 1974, pp. 633, 657 (Code Ann. § 68A-403).

The charge of the court in this case properly presented the question of alleged negligence on the part of Andrews by asking the jury to determine if he proceeded into the intersection cautiously; whether his doing so, if incautiously, was the proximate cause of the accident; or whether the negligence of Buckner was the cause of the accident or otherwise offset Andrews' negligence, if any. Nevertheless, these instructions were effectively nullified or, at best, confused by the further charge of the court that Andrews was negligent per se by proceeding through the malfunctioning red light. The jury was not allowed to determine whether Andrews acted with reasonable caution and therefore without negligence, with the obvious consequence that the accident would thus have been caused by the negligence of Buckner. Instead, the jury was told that Andrews' action was negligent per se and the only remaining question was whether Buckner was contributorily negligent.

We do not pass upon any question of who was negligent or to what degree. But we do conclude that it was error for the court to admit evidence of the contents of the state statutes and the similar city ordinances dealing with a "red light" traffic-control signal where the evidence did not support such a charge, and to charge the jury that violation of such statutes and ordinances was negligence per se. Under the circumstances of this case, we further hold that it was error prejudicial to the rights of appellant and requires a new trial. See *Cox v. Crow*, 109 Ga. App. 769, 771 (137 SE2d 393) (1964); *Turner v. Tomberlin-Sheetz Architects*, 112 Ga. App. 661 (145 SE2d

743) (1965).

2. Appellants urge in their second enumeration of error that the trial court erred in failing to charge on the duty of the plaintiff to operate his vehicle in a safe and prudent manner when approaching the crest of a hill and approaching an intersection. Even though Buckner had the apparent right-of-way with the green light, this did not relieve him of the duty to operate his vehicle at a safe and prudent speed and take all necessary appropriate measures to avoid a collision. *Laseter v. Clark,* 54 Ga. App. 669 (189 SE 265) (1937). The charges requested by appellants were consistent with the evidence and went directly to their contention that Buckner was injured through his own negligence. In the event of a retrial of these issues, we are satisfied that this error will not be repeated.

3. Appellants also complain that the trial court erred in not giving a charge on the issue of assumption of risk by Buckner. There was no evidence that Buckner, having seen an impending collision, deliberately ignored the risk and proceeded without caution. Buckner himself denied seeing the bus until just before the impact. Andrews testified that likewise he did not see Buckner until just prior to impact. We are satisfied that the circumstantial evidence giving rise to an inference of excessive speed was covered in the charge on contributory negligence. The court did not err in refusing this charge.

4. In their last enumeration of error, appellants complain that the trial court erred in denying their motion for a new trial. For the reasons stated in Division 1 of this opinion, the trial court erred in denying that motion.

*Judgment reversed. Deen, P. J., and Webb, J., concur.*

ARGUED SEPTEMBER 6, 1977 — DECIDED OCTOBER 25, 1977 — REHEARING DENIED NOVEMBER 15, 1977.

*Huie, Sterne, Brown & Ide, Terrence Lee Croft, C. Wilson Dubose,* for appellants.

*Johnson, Harper, Ward & Stanfield, William C.*

*Lanham, Cullen M. Ward, Clark A. McGehee,* for appellee.